Good morning, your honors. May it please the court, my name is Bernadette Villica Connelly. Put that microphone right over there and speak up. Okay. My name is Bernadette Villica Connelly, and I'm here to represent the petitioners in this case. As a matter of housecleaning, I'm not going to address the case that starts with O2, because there are no legitimate arguments that we can proceed under. We looked potentially at an imputation argument to see whether there was anything that could be argued regarding the 10-year presence required for cancellation of removal, but that could not be argued. So I'm arguing the denial of the two motions to reopen that were consolidated with the case. Okay. And so I would like to reserve one minute of rebuttal time, and now I'm going to address the two motions in sequence. The two motions to reopen involved a mother and a daughter, and both were based on a request for asylum under domestic violence. And the first case I want to address is the daughter's case, Isabelle Anna. I'm going to refer to her as Anna. The mother's name is Magdalena. In this case, the BIA abused in Anna's case, the BIA abused its discretion and failed to appreciate basically the limiting screening nature of the motion to reopen. The BIA found that Anna did not establish a prima facie case for asylum based on the horrific abuse that she suffered at the hands of her husband. While admittedly no marriage certificate was provided, the BIA did not deny the case on that reason, but said that because Anna was not sure exactly where her husband was, whether he was still in Mexico, even though she believed he was in Mexico, that because she was not exactly sure where he was, that she could not meet a prima facie case for asylum, since she could not show that the country conditions as to her changed in Mexico with her husband's presence in Mexico. And in that case, I want to say that when they wanted to have more corroborating evidence, should I speak more? All right. Is that better? Yes, much better. Thank you so much. So in a prima facie case for a refugee, the alien presents affidavits or any other evidence, materials that if true demonstrate that she has a well-founded fear should be sufficient and no other corroborating evidence should be requested. Also, the petitioner did state that she believed that her husband was in Mexico, even though later on in her declaration she qualified that by saying she did not know exactly where he was and believed he was going back and forth. So BIA acknowledged that domestic violence is widespread in Mexico and did not raise any issues regarding that. So the court has held in Gadesi v. INS that motions to reopen are not held basically without factual hearings. So there is no fact-finding by the BIA, and unless the facts as alleged are not believable are supposed to be accepted as true. What evidence did she lay before the board to show that she might be eligible for a battered spouse withholding? There was a problem with that, Your Honor, in that we don't know the exact immigration status of the husband. And one of the requirements for cancellation of removal under VAWA is that the spouse is either a lawful permanent resident or a United States citizen. She stated in her declaration that she believed that her husband was, or maybe, maybe, she didn't know, a lawful permanent resident, and she believed that because her father-in-law had a green card. Now, in the motion to reopen, the standard for a prima facie case is that the BIA defined it as one in which the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied. We have not required a conclusive showing that eligibility has been established. Rather, we have reopened proceedings where the facts alleged, when coupled with facts already off record, satisfy us that it would be worthwhile to develop the issues further at the plenary hearing at reopening. And there is a provision in the regulations that's found at ACFR section 1204.1g3 that states that if a self-respondent is unable to provide or present primary or secondary evidence of the abuser's status, that then the service will attempt to electronically verify the abuser's citizenship of immigration status. So you made that request in your motion to reopen. What happened to that request? It wasn't acted upon. So one of the beef I have with the BIA is that the case should have been remanded to the immigration court with orders to the office of the chief counsel or DHS to investigate that. Because if the BIA found that the domestic violence in Mexico is widespread and is established, so one of the prompt hardships certainly would have been fulfilled. The petitioner does not have a criminal record, and she has U.S. citizen children, and she was married. So the one missing facet was something that the petitioner could not provide. And one of the suggestions I believe that was made was that she could have gotten corroborating evidence from her abuser's family. Anybody who is familiar with abusive relationships, you just simply do not go to your abuser's family and try to obtain information, because then information can be related to him, you know, and that would put the petitioner in danger. So all we requested was that that be sent back to the immigration court so that that could be pursued. And furthermore, because her husband was not a citizen, there was no way that she could have had an immediate relative visa available, so it couldn't have been reopened under that reason. You wanted to save some time for rebuttal? Yes, I actually reserved one minute. Okay. And then I also wanted to say that the BIA's notion that because Anna supposedly did not report for deportation is just not supported by the record. They had a baggage order, and they had to show up for deportation on April 2nd. However, I think that was a Monday. On the Friday before, this court had granted a stay, and that was submitted to the BIA together with our motion to reopen. So she is not a fugitive. She did not show up because she didn't want to show up, but she was protected under a stay and therefore did not have to show up. Maybe you want to save the rest of your time for rebuttal. All right. Thank you. Thank you. We'll hear from the Attorney General at this time. I have a question for you. Yes, Your Honor. Why couldn't they find out whether he was in fact a citizen or had a green card? Well, Your Honor, under the regulations, a VAWA, a person claiming protection under VAWA, has a right to do a self-petition to the agency and seek protection under that statute. However, and at that point, had she done so, there would have been some assistance in that regard. At no time did Petitioner Anna ever file a self-petition, and in fact, I was going to address in my presentation today, even with the Court, she did not present an application under VAWA. Well, but she did. Go ahead, sir. Why don't you tell us who you are? I'm sorry. Good morning, Your Honors. Ann Wilhuff for Respondent, United States Attorney General Holder. May it please the Court. Well, to follow up on Judge Trager's question, though, she did make that request in the motion to reopen. Now, I realize it's not in the form that normally would the agency would have occurred, but her attorney said, we request that the service conduct a search pursuant to the regulation. Well, that regulation, again, Your Honor, that deals with administrative claims, self-petitions. We're in a defensive posture here asking special cancellation of removal. Right. She has a burden, and that regulation ---- Let me spin out the practical problem. And I understand your technical defenses, but here's someone who alleges that she's a battered spouse. And I know your position is it's her burden to come forward, but in fact, if what she says is true, it's really practically impossible for her to go to the battered spouse and say, provide me with evidence that you're an LPR. I mean, that's just not going to happen. And then leaps on the fact that she hasn't proven that he was an LPR, it is essentially preventing her claim, if you follow what I'm saying. I do. Your Honor, I don't believe the agency refused to give her that. And I want to point out a couple of things. Well, where did the agency respond to the request? The agency could have said, well, go ahead, where in the record did anybody respond to the request that was made in the motion to reopen? Well, first of all, by the statute, those claims have a ---- this motion to reopen was for two very distinct purposes, and I think it's important to recognize that, because both we had a motion to reopen on grounds of asylum withholding and CAT, and we had a motion to reopen for special cancellation. Right. There was, as to each of them, there's very strict statutory time periods applicable, and the board, in a dispositive finding, found them both to be untimely, and I can address that. So I guess the answer to my question is, there was no response. Now, what you're asking is, you're explaining why the motion was denied. My question was, where was there a response to the request? And I think the record's clear that there's no response to the request specifically. Am I wrong on that? Well, again, Your Honor, I believe that I would point out that we'll talk about the special rule cancellation request, which the board found untimely, and it would not have been untimely if it had been within a year and accompanied by a cancellation application under VAWA. The board didn't have one in front of it. There was, yes, there was some verbiage in her motion that she wants the agency to find it, but again, I would say that she never came forth to the agency. No, she made a request, and what the agency could have said is, we don't have to respond to the request because there's a different procedure, it's untimely and so forth. But maybe I'm wrong in reading this. I just didn't see a response to the request. Well, I guess I would say that the board's decision was a response in that it addressed several dispositive grounds here, and I'd like to ---- It gets back to the practical problem is when the government raises the issue saying, you didn't prove this, and a bad response is, I can't prove it. And in the government's defense, we had a petitioner here whose case has been penning for years. She alleged abuse years ago and, in fact, did not come up with these claims, which are absolutely horrible graphic to read and disturbing and the ones that she wants you to focus on because that's the part that's so compelling in this case. However, the first time those were brought to anyone's attention is two days before she was to appear for her removal, which had been penning for years. And, in fact, she filed ---- And she was pro se at that point? Pardon me? She was pro se earlier, correct? No, I don't believe so. We have three cases in front of the Court here. The very ---- the O2 case involves her entire family. She did petition. Ultimately, they asked for the Court to dismiss that voluntarily and allow them 90 days to leave. The Court granted them that privilege. They didn't leave. A couple years later, they're still in the country, and at that point, they do get served with a bag and baggage letter. Two days before they're supposed to report to that, they come up with these, again, horrific allegations of abuse and battering that had never been raised before. They never brought a claim before the agency. They ---- How long would it take to do a computerized check? I honestly can't answer that, Your Honor. I wouldn't know how long they would need to locate. I mean, perhaps if this individual is not in our rolls at all, it would be really hard to find out. I'm just not sure of that process. I do know that the steps necessary to invoke that process were just never taken. But I would point out, first of all, as to the motion to reopen for asylum and withholding ---- Judge Kruger has a question. It's more in a way of a comment. I mean, the Department of Homeland Security has just published new regs. The President has made statements sympathetic to the whole issue of battered women. And here we're stuck with a procedural finding in which, you know, the agency ---- This is not a situation where the petitioner has access to the information. I mean, the agency, and to be blunt about it, every time I come into this country, they put my passport through the thing. They tell me right away, and they even know that I'm a judge. So, you know, welcome home, Your Honor. You know, I can't believe it would have been that difficult for them to find out that, in fact, the guy maybe had no green card, so he wouldn't be in the system altogether. He was illegal himself. But, you know, it's just, you know, we may be stuck, but I'm very unhappy being stuck. Well, I do believe that the statute confines the ability of the agency to take action as well. Well, no, it doesn't. Is there something in the statute that prevented somebody from going and checking? If, in fact, she ---- again, I would point out that her VAWA claim was untimely, and it was not accompanied by an application for that protection. And that's under Section 240, Cap A. But, in fact, if she had attached a green card or a facsimile of a green card to her motion to reopen, the BIA would have taken a look at her, right? Well, certainly she would have made one prong of the late filing go away. That is, it needed to be accompanied by the application. Again, the Board was looking, like I said, first and foremost, that the motion to reopen on the grounds of asylum withholding and CAT was untimely. I think it's undisputed. It's five years late after the Board's December 11th O2 petition, and she did not come forth with changed country conditions. She alleged that her husband was in Mexico, which is ---- and the Board found that that she had not established that. That's a fact. I mean, I don't mean to quibble with you, but in practical terms, how is she supposed to establish? What you're asking her to do is to go find her battered spouse, the spouse she's afraid of seeing, and then saying, let me prove where he is. In the battered spouse syndrome, it really isn't particularly realistic for the government to say, well, you didn't show where he was and you didn't show that he had a green card, is it? Well, I think in this case that it is. I think this individual, as you review the record, you will see this is a removal proceeding that has gone on since the 90s. Yes, well, that's not unusual here. So if you're asking us to be shocked, that's not right. No, I'm not asking you to be shocked. But I do think that what's fair is fair here. She could have ---- she had ample opportunity to come forth with these claims and ask the government for some help, okay?  And she had no interest in seeking any protection until two days before she was supposed to be removed? I don't know that she didn't have any interest. I mean, these regulations, and we deal with them all the time, are Byzantine. And people fall into procedural traps all the time. So to expect people really to understand and know what form of relief is available is, I mean, I don't ---- I'm a little bit sympathetic to Petitioners who come in and say, well, I just didn't know it was available until I got an attorney two days before. Well, let's ---- I understand your argument. I'm just saying that the practical problems of a battered spouse asserting a claim for relief given the high standards are pretty formidable. All right. And may I point out, at least as to Mother Petitioner Magdalena, she is per se not a battered spouse. She's the mother of a person. That is a per se ineligibility there, in addition to the fact it was an untimely claim. So there's really nothing on that PFR that can really legally be done. I don't ---- I believe as a matter of the law, the petition brought by daughter Ana Garcia, again, was untimely. The evidence is clear. She has no idea what her husband's legal status is. I don't ---- in this posture, in this proceeding, I don't believe the burden was on the government to go and find that out for her. Now, I understand Your Honor's comments. I'm just ---- but there was never a response to her request in this proceeding that the government respond under the regulations. That's clear. Now, your response would be the government doesn't have to. Well, I don't believe that, again, her case was an administrative self-petition by a VAWA petitioner. And I believe that that's, you know, under those circumstances. I don't believe she asked for like a ---- I'm fairly certain, and you can correct me as you review the record if I'm wrong, I don't mean to mislead, but I don't believe there was any kind of, like, request with DHS during that proceeding to stay or allow that to be explored. I don't know that there was. Well, the Respondent is unable to verify his past or present immigration status. He therefore requests clarifications from the U.S. United States Citizen and Immigration Services of his immigration status pursuant to 8 CFR section 1204.1.2. You're reading from, Your Honor, which document? Her motion to reopen. Well, again, Your Honor, I do believe her motion is not accompanied by the application. I would also like to address, again, just to clarify, the untimeliness is the first dispositive ground. The Board never reached the prima facie issue with respect to asylum and withholding in CAT. I think that petitioner suggested that the Board did, but it didn't go there. It didn't get passed untimely. Special rule cancellation as to both mother and daughter, the Board found dispositive statutory ineligibility. The Board didn't say you weren't battered or none of this happened. It didn't get there either. And finally, as to the allegation that as to the mother, where the Board talked about prima facie eligibility for cancellation of removal, the Board said even if we were to open it, it's untimely, but even if we were to, you were otherwise wouldn't be warranting of relief as a matter of discretion. And just as one of the reasons that the Board said that, they suggested or stated that you didn't show up for your bag-and-baggage hearing or that you didn't comply with voluntary departure. Petitioner's brief, she makes numerous factual allegations that, in fact, she didn't have to do that, but that wasn't what was in front of the Board at the time. I mean, in fact, in her motion, she's telling the Board, help, I need an immediate stay of removal. I'm under imminent danger of removal. She doesn't tell the Court two days ago, or the Board, excuse me. I went to the Ninth Circuit and asked for an immediate stay. The Board at that point, and nor did she advise the Board of that at any point. Well, she didn't have a petition for a review pending, but I think we understand. Well, she did. She reinstated it. Yeah. I think we understand the other parts of your argument. Okay. Thank you. Yes. Well, our questions have taken you over your time. I wonder if you wouldn't mind when you leave here today, your client is the United States Citizenship and Immigration Service? Department of Homeland Security and within that, yes. Okay. If you wouldn't mind checking with the Chief Counsel for the Citizenship and Immigration Service and ask them if they're comfortable with the position the government has taken in this case. You don't have to respond to the panel. I'd just like you to do that. Okay. Thank you. You're welcome, Your Honor. Thank you. Thank you. Rebuttal? Yes, Your Honor. Sorry. Well, first of all, I would like to point out that that is a factual mistake. In fact, there was a request or an application for relief attached to the motion to reopen in the form of a 42-B application for rather cancellation, and that's in the record starting at 1188. So it was attached. Okay. So that was just a little correction. And then don't forget the microphone. I won't. Okay. Thank you. Regarding the BIA did not exactly say that the motions in Anna's case, that the motion was filed late. What they had a problem with was that the abuse had been ongoing. However, it's also not correct that Anna had not sought help. She had sought help in 2004 when she filed a restraining order against him. And then in 2005, she stated that he left to Mexico. So there was no more abuse. So for her, the problem became more pressing, at least to her asylum case, when she received the bag and baggage order. And, yes, it was two days before the bag and baggage order, and we didn't get the case until a couple of days before that. So in terms of practical matters, while one wants to do the best job you can, I mean, if you have to put something together really, really quickly, you don't have the time to put everything in as you could do when you had an affirmative defense before the immigration court. Okay. We understand your argument. Thank you very much. The case just argued will be submitted for decision and pending further order of the court. I'd like to advise, counselors, I think you may know the Supreme Court's hearing argument next week in Cosina v. Mukasey, which they granted cert on a Seventh Circuit in-bank decision saying that courts of appeal have no jurisdiction over motions to reopen. And it may be that we'll hold this case pending the Supreme Court's decision on that. Obviously, if they say we have no jurisdiction, we have no jurisdiction. But I would appreciate you following up, counsel, on my request. And I think we'd like a response after you check with the chief counsel. Sure. Somebody have a cell phone? Take it out. Don't turn it off. Take it out. Whose was it? Can I see a hand? Take it out. Thank you. If it would please the court, would my requesting that DHS undertake that investigation? What we would like you to do is for you to check with the chief counsel of the U.S. Citizenship and Immigration Service, describe the case to her, and then write back to us. All you have to say is, I've consulted. The USCIS is perfectly comfortable with our position, or they've decided to take another look at this case, or whatever. And if they would like to look at it, we could do, like, perhaps a stay in the pending case and evaluate that, and perhaps maybe put it in mediation. Maybe mediation. You would not object, I assume, to reference to the mediation. Well, I think that's probably a good idea. Just while you're sorting this out. In fact, I think that's a very good idea. Okay. Okay. It would be great if they would just check their records. Understood, Your Honor. Okay. Then we'll – I would – I understand it may not lead anywhere. We'll hold it. Will we get a mediation order then in this case? Yes. Thank you. Yes.  Okay. Thank you. Thank you.
judges: Trager, Hawkins, Thomas